Before I call the case, let me explain that Judge Brennan is not here physically, but he has read the briefs, he will be listening to the arguments, and he will be taking full part in our conference. So although you think you only have two judges, you actually have three. So are you going to believe me or you're lying? Okay, we're going to go ahead and call the case. The first case is 21-16-24, Trisha Reynolds v. Kilolo Kijakazi. And it's Mr. Rodman. And anytime you're ready. Thank you, Your Honor. May it please the court. My name is Jason Scott Rodman. I represent the appellant Trisha Reynolds. This is an appeal of a social security disability ruling under subchapter 16, benefits denial, and is what is known as a step five case. So the residual functional capacity for the administrative law judge includes, quote, occasional interaction with coworkers and supervisors. And that phrase is, and that limitation is really what today is about, in terms of whether that's supported by substantial evidence. I've got four different topic areas I'm going to be focusing on. First, in general, what's a time-based versus an intensity-based interaction? Second, the Dr. Horton evidence. And then third, some other medical evidence. And finally, Dr. Perdita's evidence. Regarding time-based versus intensity-based limitations. So the time-based limitations are pretty simple. They're pretty standard. So there's frequently, which is usually up to two-thirds. Occasionally, usually up to one-third, which is two hours and 40 minutes a day. Then rare, which is less than one-third, but not never. The intensity-based limitations are quite a different thing. They can involve a quite careful tailoring to the specific facts of the case. So superficial is a common one. But in some ways, it's a catchphrase. And often, you'll hear the administrative law judges define it in a specific way to make sure that the vocational experts understand exactly what they're talking about. What is the best evidence in the record that any medical or psychological opinion supported a limitation on not only the length of interactions with supervisors and coworkers, but also the quality or, as you put it, the intensity of the interaction? I would say the strongest evidence on record is from the two doctors who form explicit opinions. And if I may, I'm going to pivot to those two points and then come back to the rest of what I was going to say about the first topic area. And so specifically, Dr. Perdita, the consultative examiner, who not only has a doctorate degree, 2,000 to 6,000 clinical hours at least, passed various licensing exams, and would have gone at this strategically obtaining, filtering, and prioritizing information as a psychologist does. She assessed persistent depressive disorder and social anxiety disorder. She made some observations. She made some various will likely struggle to get along with her supervisors and coworkers due to her mental health issues. Now, that opinion is not vague, and it also reflects the more than likely, more likely than not standard that is the standard. How do you get to superficial interactions from that? She doesn't say that. She doesn't put an official word limitation on it. So that's a good question. And this goes back to my opening, which is that the question before the court today is really whether the phrase, occasional interaction with coworkers and supervisors meets the substantial evidence review. And my position is that with that opinion that she discounts for being vague when it really isn't and not being the right standard when it is, is not consistent with a full two hours and 40 minutes, or not otherwise explain why it's consistent with two hours and 40 minutes a day. Ms. Robin, let me just, I'm sorry to interrupt you, but this two hours you're getting, I believe from the dictionary of occupational titles, is that correct? Sure. There's a couple of different places to get it, but that's one of them. That's what you've relied on. Well, why does that technical definition of occasionally even apply here? Looking at the dictionary, it appears in the section defining the amount of force one must be able to exert to be classified into various work levels, like sedentary, light, medium. Here, occasional modifies the degree of social interaction. That's correct. That's a- So why does it even, the occasional definition with the hours you're using comes from something that isn't at issue here? Because occasional is a vocational term, and it means something. Even if you used an alternate definition that you can find, which is almost precisely the same thing from a different source in the SSA regulations, and I can produce that on demand if requested, it's still roughly a full third of the day, up to a full third of the day. That's the answer to that question. Then, with regards to shifting to my third point, as to Dr. Horton, he says brief. Brief, if you look it up, says lasting only a short period of time. Then, if you trace back his basis for brief, it has to do with both maintaining attention and concentration for extended periods, as well as because she has moderate limitations in accepting instructions and responding appropriately to criticism from supervisors. Both of those things are more than a- require more explanation and delineation of an intensity type limitations. Unless there's anything else right now, I'd like to reserve my time for rebuttal. Of course. Thank you very much. Mr. Montenegro. Good morning, Your Honor. First, I have to ask, can you hear me okay? Perfectly. Can you hear Mr. Montenegro? Yes. Yes. Thank you for asking. Please let me know if there's any difficulty hearing me. I understand there's sometimes, of course, with technology, there might be difficulty, but my name's Leo Montenegro. I represent the- Please. Good. Okay. And you can hear Mr. Robman, right? Yes. My name's Leo Montenegro. I represent the Commissioner of Social Security, the Acting Commissioner of Social Security, the defendant appellee in this action. As to the direct- directly to the issue in this case, it's undisputed that claimant has some kind of social limitation. And the sole issue raised in the district court in here is the nature of that regard. The ALJ found that claimant was limited to occasional interaction with co-workers and supervisors. That's at the record at page 19. That's the ALJ's decision. And the evidence supported that finding. Primarily, Dr. Horton, the state agency physician, said that claimant could respond appropriately to brief supervision and interactions with co-workers in work settings. That's at page 177. Psychologist Dr. Pertina more generally said that claimant would, quote, likely struggle to get along with her supervisors and co-workers due to her mental health issues, unquote. That's at page 864. The ALJ rejected that opinion as- As vague. Yes, Your Honor. And didn't appear to, you know, rely on it at all. No, no, that's true. But for completion- for completeness, I just wanted to say there was claimant's social limitations, but none of that conflicting evidence, at least none of the conflicting medical opinion evidence, supported claimant's argument that her social limitations were, in fact, as they put it, intensity-based rather than- sorry, rather than time-based. And I'll point primarily to Dr. Horton's opinion on that, because Dr. Horton was the only medical opinion that said anything about the nature of those social limitations, and Dr. Horton- Dr. Horton's opinion was of a time-based limitation as opposed to intensity-based. Beyond that, and beyond the other medical opinions, I also have to point out the claimant's own testimony, where she herself reported that she got along well with others. That's at page 862 and 347. ALJ didn't appear to rely on the claimant's self-assessment at all. The claim- the ALJ discussed some of it at- I believe it was page 20 of the decision where the ALJ noted that the claimant's only testimony about this was when she said that she became nervous or angry when she was around more than five people. That was the ALJ's discussion as to the claimant's testimony about her own- her own testimony about her social limitations. But I guess to get back to the main point, that despite claimant's- despite claimant's assertion that her social limitations were other than what the ALJ found, there's no medical opinion evidence that those social limitations were intensity-based versus time-based. The evidence discussed in the ALJ's decision and also in the poll supported the ALJ's findings of time-based limitations rather than intensity-based ones. And claimant's assertion of intensity-based limitations are- seem to be based more on her own alternative interpretation of the record medical evidence, which it has to be, I guess, because there is no, as I said, no medical opinion evidence supporting her assertion. I think since her argument is based on her alternative reading of the evidence, and since substantial evidence discussed by the ALJ supports the ALJ's findings of time-based social interaction limitations, substantial evidence then supported the ALJ's findings, the finding at issue, and I submit that the ALJ's findings and decisions should be affirmed. If there are no questions, Your Honor, I think that's all I have to say. I did have a question. Certainly. It was about, you know, the job of hand packager. Is Ms. Reynolds correct that that job includes working with a moving conveyor belt? Because if that is, that's not compatible with the ALJ's findings that you shouldn't be working with moving machinery. I know no one raised the issue, I know that, but it just jumped out at me. As a possible inconsistency. Excuse me, Your Honor, I'm just checking my notes. I have to admit that I did not look closely at the jobs identified by the vocational expert, because as you, excuse me, as you acknowledged, that wasn't raised as an issue. I don't know. I'm looking at the, honestly, I'm looking at the VE's testimony, which for the court's convenience, I'll point out starts somewhere around page 55 of the record. That's where the VE talks about hand packager. And I don't see that that was actually discussed or raised below. So I really, I don't know. I don't know what the DOT says about that, or if the VE actually addressed that, or when you come down to it, I don't know if that occupation requires working with a conveyor belt. Maybe it does, maybe it doesn't. I would say that if it wasn't raised below, and it wasn't raised at the hearing, then it could be considered as waived. But the court can look into that, I suppose, or if you want extra briefing on that additional to address the court's request in that regard. Thank you. Okay, Mr. Rodman. Thank you. I first wanted to point out that the argument today is not based upon plaintiff's assertion so much, excuse me, appellant's assertion so much, in that, for example, she presented to Dr. Pradina saying things like that she didn't have problems getting along with others, but Dr. Pradina used her tools of analysis and determined otherwise, not only that, but the other items in the record. So the ALJ, top of page 21, cites like six places saying that things are otherwise basically normal. But one of those is an ENT doctor. One of those is from before the time period. One of those is the non-psych CE. I mean, there's a reason they order a psych CE. And then three of them are in the mental health records. But those three don't address the concomitant, quote unquote, goals in those records, which would have been designed by the practitioners intending to address the issues which represent not mere allegations of the claimant. I wanted to say, regarding Dr. Horton, that brief does not equal occasional by a plain language reading of the word. And then I wanted to pivot back to talk a little bit what my first topic here today, which was in terms of what are these intensity-based things. So even no crowds would seem to be intensity-based. Freedom to not interact with supervisors, except for, I mean, you can go over the map, something tailored. I'm not saying that these are specific ones. That's not my burden or my duty. But these are examples. Freedom to not interact with supervisors, except for brief periods of the employee's option. A work environment that allows occasional periods of non-interaction at the employer's discretion. A work environment in which it is tolerated for the employee to only have moderate ability to accept instructions and respond appropriately from supervisors. When supervision is given, it is limited to that which is necessary, limited to short, concrete feedback. If feedback is to be given, it is done in a private setting with an opportunity for a break afterwards. There's all manner of options. So there could be some variant of flex time to account for the mood variation. There could be supervision, but only briefly, such as one to two minutes at a time, not repeated or constant. Do this. Do this. Do this. Do this. Do that. Do that, too. And even it's simple. Otherwise, if there's going to be conversation that's not related to work, it needs to be at the employee's option. There's a host of other examples, but unless you have more questions, I thank you for your time. Thank you both very much. And the case will be taken under advisement. You.